UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EVARISTO SERRANO-VARGAS,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:18-CV-04084-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* petition for a writ of *coram nobis* by petitioner Evaristo Serrano-Vargas. See Docket No. 1. Now pending is respondent the United States of America's (hereinafter "government") motion to dismiss Mr. Serrano-Vargas' petition without holding an evidentiary hearing. See Docket No. 10. Mr. Serrano-Vargas opposes the motion. See Docket No. 12. This matter has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

## FACTS

The facts pertinent to Mr. Serrano-Vargas' petition are as follows. On January 10, 2011, he was charged by complaint and later by indictment with making a false claim to citizenship (in violation of 18 U.S.C. § 911) and knowingly using an identification document, a Social Security card, that was

not issued lawfully for his use, in violation of 18 U.S.C. § 1546(b)(1). See United States v. Serrano Vargas, 4:11-cr-40010-KES, (hereinafter "CR"), Docket Nos. 1 and 18.

On February 28, 2011, Mr. Serrano-Vargas filed a petition to plead guilty to count two of the indictment charging him with using the Social Security card unlawfully. See CR Docket No. 23. As part of his petition, Mr. Serrano-Vargas stated under oath that on July 23, 2009, he used a Social Security card which he knew had been falsely made so as to get a job in the United States. Id. at p. 13, ¶ 47. At sentencing, the district court sentenced Mr. Serrano-Vargas to time served. Id. at Docket No. 26.

Mr. Serrano-Vargas alleges he was deported from the United States following his 2011 conviction in this court. On February 25, 2016, he was found in the Northern District of Iowa without permission to be in the United States. He was indicted for illegally re-entering the United States in the Northern District of Iowa, in violation of 8 U.S.C. § 1326(a). See United States v. Serrano-Vargas, 1:16-cr-00021-LRR (hereinafter "Iowa CR"), Docket No. 2 (N.D. Iowa Mar. 23, 2016). He pleaded guilty and was sentenced to eight months' incarceration on July 28, 2016. See Iowa CR Docket No. 22.

Mr. Serrano-Vargas is now no longer in federal custody pursuant to either of the above convictions. He is, however, in the custody of Immigration and Customs Enforcement (ICE), presumably awaiting deportation again. He now seeks relief from his 2011 conviction pursuant to a writ of *coram nobis*. He alleges his 2011 conviction was invalid because a Social Security card is not

an identification card under 18 U.S.C. § 1546(b)(1).  See Docket No. 1.  He further alleges his court-appointed counsel was ineffective in his 2011 case for advising him to plead guilty to a violation of § 1546(b)(1) for using a fraudulent Social Security card.  Id.

The government moves to dismiss Mr. Serano-Vargas' petition without a hearing.  The government asserts (1) Mr. Serano-Vargas has not alleged sufficient grounds to satisfy the extraordinary requirements for issuing *coram nobis* relief (namely new law or newly-discovered evidence) and (2) even if he can make a threshold showing generally, he has not shown trial counsel rendered constitutionally ineffective service.  See Docket No. 11.  Mr. Serrano-Vargas resists the government motion.  See Docket No. 12.

## DISCUSSION

### A.     Standard Applicable to Petitions for Writs of *Coram Nobis*

A person convicted of a federal crime who is no longer in federal custody of any kind (not even supervised release) at the time he files his § 2255 motion cannot obtain habeas relief.  However, he can attack his sentence using a writ of *coram nobis*.  Baranski v. United States, 880 F.3d 951 (8th Cir. 2018); Kandiel v. United States, 964 F.2d 794 (8th Cir. 1992).  The scope of *coram nobis* is more limited than the scope of § 2255:  "*coram nobis* is an extraordinary remedy available at the far end of a post-conviction continuum only for the 'most fundamental errors,' . . ."  Baranski, 880 F.3d at 956 (quoting United States v. Morgan, 346 U.S. 502, 512 (1954)).

Citing the Baranski case, the government argues Mr. Serrano-Vargas must comply with the standard for filing a second or successive petition under 28 U.S.C. § 2255. Mr. Serrano-Vargas argues the standard for second or successive § 2255 petitions should not apply to him because he has never filed a § 2255 petition or any other request for post-conviction collateral relief before filing his petition in this case. The petitioner in Baranski, by contrast, *had* filed a prior § 2255 petition before filing his petition for a writ of *coram nobis*. Baranski, 880 F.3d at 953-54.

In addition, Mr. Serrano-Vargas asserts he is "actually innocent." See Docket No. 1. But he clearly is not asserting such a claim. He never argues that he did not possess a Social Security card which he knew was fraudulently issued. Rather, he argues a variety of technical innocence, not factual innocence claims. He argues that a fraudulently-issued Social Security card cannot constitute an identification document under § 1546. This does not meet the Supreme Court's definition of "actual innocence."

"Actual innocence" is not an independent constitutional claim upon which habeas relief can be granted; instead, it is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." Schlup v. Delo, 513 U.S. 298, 315 (1995). Actual innocence means factual innocence, it does not mean mere legal insufficiency. Bousley, 523 U.S. at 623. Actual innocence claims are rarely successful as they require the petitioner to carry an exacting burden. Schlup, 513 U.S. at 324.

In order to show actual innocence, Mr. Serrano-Vargas must (1) produce "new reliable evidence" not presented previously; and (2) he must "show that, in light of all the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crime for which he pleaded guilty and was convicted." Schlup, 513 U.S. at 324; United States v. Apker, 174 F.3d 934, 938-39 (8th Cir. 1999).

Evidence is "new" only if it was not available at the time of the plea and if it could not have been discovered earlier through the exercise of due diligence. Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999). A petitioner can make the new evidence showing only where he demonstrates that the factual basis for the evidence did not exist at the time of the plea and could not have been presented earlier. Id. The evidence must not only be "new" but it must also be "reliable." Schlup, 513 U.S. at 324.

Here, Mr. Serrano-Vargas cites no new evidence. Rather, he cites legal authority (discussed in detail below) which pre-dated his 2011 guilty plea by several years. Suffice it to say that Mr. Serrano-Vargas has not pleaded in his petition, or shown the court in subsequent court filings, that he has any new evidence. As such, the court disregards his claim of "actual innocence," which, in any case, is really a claim of legal insufficiency.

Rather than address the procedural complexities presented by Mr. Serrano-Vargas' petition, the court finds it more expedient to simply address the merits of his petition. Because the court concludes he cannot establish common garden-variety ineffective assistance of counsel, the court

5

concludes he has failed to show a "most fundamental error" as required by the *coram nobis* writ.

**B.   Trial Counsel was not Constitutionally Ineffective**

   **1.   Standard Applicable to Ineffective Assistance Claims**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so

6

> serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). American Bar Association standards and similar directives to lawyers are only guides as to the reasonableness of counsel's conduct, they are not its definitive definition. Id. The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009).

It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there

7

is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

### 2. Application of the Standard to Mr. Serrano-Vargas' Case

The statute to which Mr. Serrano-Vargas admitted violating provides as follows:

> § 1546. Fraud and misuse of visas, permits, and other documents
>
> * * *
>
> (b) Whoever uses—
>
>> (1) an identification document, knowing (or having reason to know) that the document was not issued lawfully for the use of the possessor,
>>
>> (2) an identification document knowing (or having reason to know) that the document is false, or
>>
>> (3) a false attestation,
>
> For the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act, shall be fined under this title, imprisoned not more than 5 years, or both.

See 18 U.S.C. § 1546(b).

Section 274A(b) of the Immigration and Nationality Act, referenced in § 1546(b), is codified at 8 U.S.C. § 1324a(b). This provision makes it unlawful to employ an unauthorized alien. Id. at (a). The provision requires employers to obtain, and prospective employees to provide, certain documentation--among those, documents establishing identity. The statute provides the following regarding such documents:

8

> **(D) Documents establishing identity of individual**
>
> A document described in this subparagraph is an individual's—
>
>     (i) driver's license or similar document issued for the purpose of identification by a State, if it contains a photograph of the individual or such other personal identifying information relating to the individual as the Attorney General finds, by regulation, sufficient for purposes of this section; or
>
>     (ii) in the case of individuals under 16 years of age or in a State which does not provide for issuance of an identification document (other than a driver's license) referred to in clause (i), documentation of personal identity of such other type as the Attorney General finds, by regulation, provides a reliable means of identification.

See 8 U.S.C. § 1324a(b)(1)(D).  Social Security account number cards are not specifically listed in the definition of identity documents in subsection (b)(1)(D), but they *are* specifically identified in subsection (b)(1)(C) as "documents evidencing employment authorization."  See 8 U.S.C. § 1324a(b)(1)(C).

    Regulations have been promulgated implementing § 1324a.  Under those regulations, an identification card issued by federal, state, or local government agencies or entities constitutes an identification document.  See 8 C.F.R. § 274a.2(b)(1)(v)(B)(1)(v).  However, if the government ID does not contain a photograph, the document "shall" contain other identifying information "such as:  name, date of birth, sex, height, color of eyes, and address; . . ."  Id.  The court notes that 8 C.F.R. § 274a.2 implements 8 U.S.C. § 1324a.  It is *not* the implementing regulation for § 1546(b).

9

Mr. Serrano-Vargas cites United States v. Tyson Foods, Inc., 258 F. Supp. 2d 809 (E.D. Tenn. 2003), in support of his argument that a Social Security card does not constitute an identification document under § 1546(b).  He asserts his counsel should have known that and was ineffective by advising Mr. Serrano-Vargas to plead guilty to violating § 1546(b) based on possession of a Social Security card not lawfully issued to Mr. Serrano-Vargas.

In the Tyson Foods case, the defendant was charged with violating § 1546(b) by using or causing the use of illegal identification documents, namely Social Security cards.  Id. at 812.  The court dismissed those charges against the defendant, finding that "identification documents" was not clearly defined so as to include Social Security cards and, applying the rule of lenity, the defendant was entitled to have those counts dismissed.  Id.  It was a question of first impression for that court.  Id.

The court began with the statute itself and noted, as demonstrated above, no definition of "identification document" is provided in the statute.  Id. at 812-13.  The court then examined the definition of identification document found in 8 U.S.C. § 1324a(b) because § 1546(b) refers to § 1324a.  Id. at 813.  Again, the statute was not determinative.  Id.  The court then examined the regulation reproduced above and concluded a Social Security card was *not* an identification document under the regulation.  Id.

The court stated § 1546(b) could be interpreted as providing that Social Security cards *are* identification documents, but could just as plausibly be interpreted as providing Social Security cards *are not* identification documents. Id. at 815. The court noted at length that Social Security cards are among those documents listed in § 1546(a) which it is a crime to possess if fraudulent. Id. Therefore, it was not unreasonable that Congress intended to make it a crime to *present* such fraudulent documents as proof of employability under subsection (b) of § 1546. Id. at 815-16. The court then examined the legislative history of § 1546(b) and found it to be inconclusive. Id. at 814-16.

In the end, faced with what it termed a "manifestly ambiguous" provision capable of "two completely different, reasonable interpretations," the court applied the rule of lenity and dismissed the § 1546(b) charges based on Social Security cards. Id. at 818.

The government cites to 18 U.S.C. § 1028, which does define "identification document." Section 1028 makes it a crime to produce, transfer, or possess identification documents without lawful authority. See 18 U.S.C. 1028(a). That statute provides in pertinent part that an "identification document" is, among other things, "a document made or issued by or under the authority of the United States Government, . . . which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals." See 18 U.S.C. § 1028(d)(3). A "false

11

identification document" is one that "appears to be issued by or under the authority of the United States Government" but is not issued under that authority. Id. at (4).

The court in United States v. Quinteros, 769 F.2d 968, 970 (4th Cir. 1985), held that Social Security cards were commonly accepted as a means of identification for purposes of § 1028, even if the Social Security Agency states that the cards are not to be used for this purpose. In fact, Social Security cards were frequently issued to elderly persons for the purpose of providing identification so that they could cash their checks. Id. Social Security cards used to bear the statement, "Not for Identification Purposes," but the agency dropped this statement from the front of the card in 1972 because people used the cards for that purpose in any event. Id.

The legislative history for § 1028 (from 1982) bolstered the court's conclusion. Id. The House Report for § 1028 indicated that the statute was not limited to driver's licenses and the like, but was intended to extend to all documents "commonly accepted" for identification "in certain circles," including "*any unique number assigned to an individual by and Federal or State government entity.*" Id. (citing H.R. Rep. No. 802, 97th Cong., 2d. Sess. 9, *reprinted in* 1982 U.S. Code Cong. & Ad. News 3519, 3527) (emphasis added by Quinteros court).

The court in United States v. Murillo, 2008 WL 697160 (N.D. Iowa Mar. 13, 2008), was presented with the same argument the government

12

presents here based on § 1028 and the Quinteros case. The Murillo court rejected that argument, characterizing it as an invitation to apply the definition from one statute (§ 1028) to another statute (§ 1546(b)) where there was no indication from Congress that Congress intended that result. Id. at *2. The court instead concluded that a Social Security card was not an identification document under § 1546(b) and dismissed the count of the indictment based upon a Social Security card. Id. at *3. This court notes that Murillo was not a postconviction case, but rather, the decision was rendered preconviction.

The question is a close one. Section 1546(b) was enacted in 1986. Anecdotally, this court remembers writing checks in the 1980s at merchants and commonly being asked to present its Social Security card as a means of identification. At that time, many persons even had their check blanks pre-printed with their Social Security numbers so they would not have to pause to write them on each and every check. The state of South Dakota began issuing driver's licenses in the 1990s using drivers' Social Security number as the driver's license number, a practice that has now been abandoned. The point is this: before the digital financial age, Social Security cards were in common currency as identification documents. That has now changed. But it is entirely possible and plausible that Congress intended for Social Security cards to be considered identification documents when it promulgated § 1546(b)

13

in 1986. The statute, like so many others, has not kept pace with the changing times.

But the question before the court is *not* whether to interpret § 1546(b) now, today, as including Social Security cards as "identification documents." Rather, the question is whether in 2011 counsel's representation of Mr. Serrano-Vargas was so deficient as to represent constitutionally ineffective assistance of counsel because he did not spot the potential issue of whether a Social Security card was an identification card under § 1546(b). The answer is, quite clearly, "no."

Even today, there is no case directly on point in the Eighth Circuit or the Supreme Court. Nor has there been a decision in the District of South Dakota directly on point that has been located by this author. Accordingly, there is no binding precedent on this issue in this court.

A counsel's failure to raise a novel argument or an issue of unsettled law does not render his performance constitutionally ineffective. New v. United States, 652 F.3d 949, 952 (8th Cir. 2011); Anderson v. United States, 393 F.3d 749, 754 (8th Cir. 2005). Even where an issue is percolating in the lower courts, or where a split of authority exists among the courts, counsel's performance "falls within the wide range of professionally competent assistance" if such an issue is not raised when there is no binding precedent in counsel's forum. Fields v. United States, 201 F.3d 1025, 1027-28 (8th Cir. 2000). Accordingly, this magistrate judge concludes Mr. Serrano-Vargas cannot demonstrate

ineffective assistance of counsel. It follows, then, that he cannot make the higher "extraordinary" showing required to grant a writ of *coram nobis*.

## CONCLUSION

Based on the foregoing law, facts and analysis, this court respectfully recommends granting the government's motion to dismiss [Docket No. 10] and dismissing with prejudice Mr. Serrano-Vargas' petition for a writ of *coram nobis* [Docket No. 1].

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED December 7, 2018.

BY THE COURT:

*Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge